**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

FIVES BRONX INC.,

                             Plaintiff,

       -vs-

KRAFT WERKS ENGINEERING, LLC,
*et al*.,

                            Defendants.

Case No. 1:22-cv-00551

JUDGE DAVID A. RUIZ

**MEMORANDUM OPINION & ORDER**

**I. Procedural Background**

In this case, Plaintiff Fives Bronx, Inc. ("Plaintiff," "Fives" or "Bronx") alleges claims against three former employees and their new employer. (R. 1). The individually named Defendants—Edward Dray, Brian Lombardi, and Scott Roach—filed a joint Motion to Enforce Arbitration. (R. 8). The following day, Defendant Kraft Werks Engineering, LLC ("Kraft Werks") filed a Motion to Stay Pending Arbitration and also moved for an extension of time to file its answer until fourteen (14) days after the Court rules upon the Motion to Stay. (R. 11 & 12).

Plaintiff filed opposition briefs to both the Motion to Enforce Arbitration and the Motion to Stay

Pending Arbitration. (R. 17 & 18). Defendant Kraft Werks filed a Motion to Strike Plaintiff's

Response or, in the alternative, Reply in Support of Motion to Stay Pending Arbitration.[1] (R. 19).


## II. Factual Allegations and Causes of Action Alleged

The Complaint asserts Plaintiff is a subsidiary of Fives, Inc., an international industrial

engineering group that designs and provides complex equipment, technology, and services, and is a

leader in the field of hydrostatic testing. (R. 1, ¶¶9, 13). It is alleged Defendant Kraft Werks hired

Defendants Dray, Lombardi, and Roach— "all of whom were key executives within Bronx or other

Fives entities, and each of whom earlier agreed not to use or disseminate any confidential or

proprietary information belonging to [Plaintiff]."[2]  (R. 1, ¶16).

It is alleged Defendant Kraft Werks and Defendants Dray, Lombardi, and Roach conspired

to steal trade secrets from Plaintiff. (R. 1, ¶38). Specifically, the Complaint alleges that in 2021, a

company named Vallourec USA sought bids for modifications to its existing hydrostatic testing

---

[1] The Motion to Strike (R. 19) is premised on Plaintiff's failure file its opposition brief within fourteen days. As Plaintiff appears to have a good faith belief that it had thirty days to respond based on prior decisions from within this district (R. 22), and the undersigned finding no prejudice, the Motion to Strike (R. 19) is hereby DENIED. The Court will consider the filing as a reply brief in support of its motion.

[2] Defendant Lombardi was President and Chief Executive Officer of Bronx for years and held that position until April 20, 2021. (R. 1, ¶17). Defendant Dray worked as an engineer for Plaintiff and its predecessor "in various capacities including Head Designer and Senior Design Manager …." *Id.* at ¶23. Dray was Vice President of Operations and Head Engineer of Bronx when he resigned on June 25, 2021. *Id.* at ¶24. Defendant Roach was President and CEO of North American Construction Services, Ltd., an entity in the Fives Group and a subsidiary of Fives North American Combustion, Inc., when his employment ended on March 5, 2021. *Id.* at ¶30.

2

machine located in Youngstown, Ohio. *Id*. at ¶40, Plaintiff and Defendant Kraft Werks both competed for and engaged in the bid process, "which included presentations, designs, evidence of previous experience, and the like." *Id*. at ¶41. The Complaint alleges that Defendant Kraft Werks— prior to hiring the three aforementioned former employees of Plaintiff— "had no expertise or experience whatsoever in this line of work" and yet made various assertions "regarding its expertise and experience" to Vallourec "including in the field of hydrostatic testing." (R. 1, ¶¶42-43). Allegedly, Defendant Kraft Werks represented that it had designed and manufactured numerous machines that were actually designed, manufactured, and installed by Plaintiff. *Id*. at ¶¶45-49. Ultimately, Vallourec selected Defendant Kraft Werks over Plaintiff. *Id*. at ¶¶51-52. Plaintiff maintains that "[i]n the course of performing the work on the Vallourec Youngstown project, Kraft used Bronx's proprietary, confidential, and trade secret information, including, but not limited to, Bronx's proprietary intensification control system that was misappropriated from Bronx through the Former Fives Employees, who had access to such information while employed with Bronx or Fives." *Id*. at ¶54.

The Complaint asserts the following causes of action: (1) Trade Secret Misappropriation Under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831 *et seq*. against all Defendants; (2) Trade Secret Misappropriation Under the Ohio Uniform Trade Secrets Act, O.R.C. § 1333.61, *et seq*., against all Defendants; (3) False Advertising Under the Lanham Act against Defendant Kraft Werks only; (4) Violation of the Ohio Deceptive Trade Practices Act against Defendant Kraft Werks only; (5) Breach of Contract against Defendants Dray, Lombardi, and Roach; (6) Quantum Meruit against all Defendants; (7) Injurious Falsehood against all Defendants; (8) Unfair

3

Competition against all Defendants; and (9) Civil Conspiracy against Defendants Dray, Lombardi, and Roach.

### III. Analysis

### A. Applicable Law

The Federal Arbitration Act ("FAA") "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); *accord In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020). The Sixth Circuit has explained:

> It provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must, consistent with this text, " 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) (citation omitted). And we resolve "any doubts concerning the scope of arbitral issues ... in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010).

*In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 381.

As explained by a recent decision from this District:

The Sixth Circuit has set forth four tasks a court must engage in when considering a motion to stay proceedings and compel arbitration:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

4

> *McGee v. Armstrong*, 941 F.3d 859, 856 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). "[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714.

*Reulbach v. Life Time Fitness, Inc.*, No. 1:21 CV 1013, 2021 WL 2581565, at *4 (N.D. Ohio June 23, 2021) (Gaughan, J.)


## B. The Lombardi and Roach Arbitration Agreements

Plaintiff raises the following causes of action against Lombardi: two counts of trade secret misappropriation under both federal and Ohio law; breach of contract; quantum meruit, injurious falsehood; unfair competition; and civil conspiracy. The Complaint specifically asserts that Lombardi entered into an employment agreement and "agreed to protect and guard the confidential and proprietary information of Bronx." (R. 1, PageID# 3-4, ¶¶18-19). Plaintiff alleges that it sent Lombardi "a cease-and-desist letter reminding him of his obligations regarding confidentiality of Fives's information, protection of Fives's trademarks, and the apparent inducement of Kraft to breach these obligations." *Id*. at PageID#4, ¶21. Count Five for breach of contract alleges Lombardi breached his agreements with Plaintiff. Plaintiff attached its Executive Agreement with Lombardi to the Complaint. (R. 1-3).

### 1. Lombardi's Agreements

Given the allegations in the Complaint and Defendant Lombardi's position in his brief, it is uncontested that Lombardi and Plaintiff entered into the Executive Agreement. Section 5 of that agreement concerns competitive activity, confidentiality, and non-solicitation. (R. 1-3, PageID# 60-63). Section 5(d)(i) of the Executive Agreement specifically states that "the Executive will keep in strict confidence, and will not, directly or indirectly, at any time, **during or _after_ the Executive's**

**employment with the Company**, disclose or use any **trade secrets** or confidential business and technical information of the Company ….” (R. 1-3, PageID# 61) (emphasis added). The Executive Agreement furnishes the basis for Plaintiff's breach of contract claim. In addition, Plaintiff's trade secret claims are intertwined with the terms of the agreement. The civil conspiracy claim directly implicates the agreement as it alleges that Lombardi, along with Dray and Roach, “engaged in a concerted action to improperly obtain Bronx's and Fives's confidential information ….” (R. 1, PageID# 17). The aforementioned counts, as alleged, appear to fall within the scope of the agreement. Also, while the Court need not decide the matter at the present, the claims of unfair competition arguably also fall under the terms of the agreement given the agreement's non-competition and non-solicitation clauses. (R. 1-3, PageID# 61).

In addition, Lombardi's Executive Agreement contains an arbitration provision. It sets forth:

<u>Arbitration</u>. Except as provided in <u>Sections 4</u> and <u>7</u> of this Agreement, any claim, controversy or dispute arising between the parties hereto with respect to this Agreement (a “Dispute”), **to the maximum extent allowed by applicable law**, will be submitted to and finally resolved by, binding arbitration. Any party may file a written Demand for Arbitration with the American Arbitration Association's Cincinnati Regional Office, and will send a copy of the Demand for Arbitration to the other parties. **The arbitration will be conducted pursuant to the terms of the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association. The venue for the arbitration will be Cleveland, Ohio.** The arbitration will be conducted before one arbitrator selected through the American Arbitration Association's arbitrator selection procedures. The arbitrator will promptly fix the time, date and place of the hearing and notify the parties. The parties will stipulate that the arbitration hearing will last no longer than five business days. The arbitrator will render a decision within 10 days of the completion of the hearing, which decision may include an award of legal fees, costs of arbitration and interest. The arbitrator will promptly transmit an executed copy of its decision to the parties. The decision of the arbitrator will be final, binding and conclusive upon the parties hereto. Each party hereto will have the right to have the decision enforced by any court of competent jurisdiction. Notwithstanding any other provision of this Section, any Dispute in which a party hereto seeks equitable relief may be brought in any court in the State of Ohio having jurisdiction.

(R. 1-3, PageID# 63; Exh. 2) (emphasis added).

Defendant Lombardi and Plaintiff also executed a Separation Agreement on May 19, 2021.

(R. 8-2, Exh. 1A). The Separation Agreement contains an arbitration clause that states as follows:

> 18.  Arbitration.  Any controversy, claim, or other dispute arising out of or related to
> Employment this Agreement [sic], or the breach thereof by either party, including
> confidentiality provisions hereof, shall be settled by arbitration in accordance with
> the Employment Arbitration Rules and Mediation Procedures of the American
> Arbitration Association (AAA) under rules applicable to **Fives Bronx, Inc.**
> employees. The parties will follow the rules of AAA but may mutually decide to use
> arbitrators who are not members, nor affiliated with AAA. The decision of the
> Arbitrator shall be final, conclusive and binding between and among the parties, and
> may be entered in any court having jurisdiction thereof. This requirement to arbitrate
> shall not preclude the Company from seeking equitable relief pending resolution of
> the dispute in arbitration. The award of the arbitrator may be entered in the state
> court having appropriate venue and jurisdiction.
>
> 19. Applicable Law. **Ohio** law will apply in connection with any dispute or
> proceeding concerning this Agreement.

(R. 8-2, PageID# 172; Exh. 1A) (emphasis in original).

Plaintiff has not challenged the validity of these agreements, and also "does not dispute that

it has agreements to arbitrate employment related claims with Lombardi and Roach." (R. 17,

PageID# 230). Rather, with respect to Defendant Lombardi, Plaintiff appears to concede that all its

claims against him are arbitrable except for the injurious falsehood and unfair competition claims,

as these are the only counts of the Complaint identified in Plaintiff's brief as non-arbitrable. (R. 17,

PageID# 232).

The Court finds it must enforce the terms of the arbitration agreements between Plaintiff and

Defendant Lombardi. The latter agreement, by its express terms, does not appear to have intended

7

to entirely invalidate the terms of the former.[3] In any event, neither side identifies any material inconsistencies between the agreements, particularly with respect to the arbitration clauses. The Court further finds that Ohio law applies consistent with the explicit terms of the Separation Agreement.[4]

In addition, both agreements state that the American Arbitration Association's (AAA) rules will apply. This is significant, as it undercuts Plaintiff's argument that it is this Court's role to determine which claims are arbitrable versus non-arbitrable. The question of arbitrability, often referred to as a "gateway issue," may be a question that is reserved to the arbitrator to decide. The Supreme Court has held that under the FAA "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 202 L. Ed. 2d 480, 139 S. Ct. 524, 529 (2019) ("an agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other") (internal quotation marks and citations omitted).

---

[3] The Separation Agreement's confidentiality provision expressly states that "Employee agrees and understands that this Agreement does not supersede or vitiate any confidentiality or non-compete agreements he/she signed while a Company employee or reduce his/her obligations to comply with applicable laws relating to trade secrets, non-competition, confidential information or unfair competition." (R. 8-2, PageID# 170; Exh. 1A).

[4] The Executive Agreement also states that "This Agreement … will be governed by, and construed and enforced in accordance with, the laws of the State of Ohio without giving effect to any conflict of law rules[.]" (R. 1-3, PageID# 65, ¶11).

8

Nevertheless, courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Henry Schein, Inc.*, at 139 S. Ct. at 531.

Defendants argue that where a contract contains a provision that states the arbitration shall be governed by the rules of the AAA, the provision is tantamount to an express delegation to the arbitrator to decide the gateway issue of arbitrability. (R. 21, PageID# 261-263). The Sixth Circuit Court of Appeals has addressed this issue as follows:

> That brings us to the question in this case. In his arbitration agreement, Piersing agreed that "[t]he American Arbitration Association ('AAA') will administer the arbitration and the arbitration will be conducted in accordance with then-current [AAA Rules]." R. 61-4, Pg. ID 982. And those Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." R. 61-6, Pg. ID 989. The question for us is whether that's "clear and unmistakable" evidence that Piersing agreed to arbitrate "arbitrability."

> There are good reasons to think it is. To start, the AAA Rules clearly empower an arbitrator to decide questions of "arbitrability"—for instance, questions about the "scope" of the agreement. And it's long been settled that parties can incorporate outside documents into a contract if their agreement says as much. Piersing's agreement says as much: it expressly incorporates the AAA Rules into the agreement and even helpfully includes a link to the AAA's website, from which one can easily access the Rules. On its own terms, that's pretty compelling evidence that Piersing agreed to arbitrate "arbitrability."

> What the text suggests the case law confirms. The Supreme Court has itself said that the AAA Rules "provide that arbitrators have the power to resolve arbitrability questions." And the Court has itself relied on the incorporation of the AAA Rules to determine what the parties agreed to. It's true that the Court has yet to put these pieces together so as to resolve the question in this case. But there's no reason for our court to wait to finish the puzzle. There's little doubt about the final picture.

> Our own circuit's precedent counsels—and perhaps compels—the same outcome. In a recent decision, our court relied on the incorporation of the AAA Rules to find that the parties had "clearly and unmistakably" agreed to arbitrate "arbitrability."

> \*\*\*

9

> What's more, district courts in our circuit have long found that the incorporation of
> the AAA Rules provides "clear and unmistakable" evidence that the parties agreed to
> arbitrate "arbitrability." Just another persuasive reason for us to do the same. Finally,
> consider that every one of our sister circuits to address the question—eleven out of
> twelve by our count—has found that the incorporation of the AAA Rules (or
> similarly worded arbitral rules) provides "clear and unmistakable" evidence that the
> parties agreed to arbitrate "arbitrability." And the one remaining circuit has
> precedent suggesting that it would join this consensus. But to the extent that there's
> any ambiguity in our prior decisions, we officially do so today.

*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844-46 (6th Cir. 2020) (citations

omitted); *accord Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021) ("By

incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions

of arbitrability."); *Kentucky Peerless Distilling, LLC v. Fetzer Vineyards Corp.*, 2022 WL 1156963

at *4 (W.D. Ky. Apr. 19, 2022). Therefore, this Court finds that the gateway issue concerning the

arbitrability of Plaintiff's claims against Defendant Lombardi is an issue to be addressed by the

arbitrator. Under the above cited binding authority, the parties' contracts, by expressly stating that

AAA rules will apply, have clearly and unmistakably agreed to arbitrate arbitrability.

Given the above authority, the Court GRANTS Defendant Lombardi's Motion to Compel

Arbitration. Consistent with the parties' agreement, the venue for this arbitration shall be Cleveland,

Ohio. Under Ohio law, which governs pursuant to the parties' agreement, "[a]rbitration does not

normally require dismissal of the claims referable to arbitration; it warrants only a stay of those

claims pending arbitration." *Morgan Stanley Dean Witter Com. Fin. Servs., Inc. v. Sutula*, 2010-

Ohio-2468, ¶ 3, 126 Ohio St. 3d 19, 19, 929 N.E.2d 1060, 1061 (Ohio 2010). Therefore, all claims

against Defendant Lombardi are hereby STAYED.

**2. Roach's Employment Agreement**

Plaintiff does not contest the existence of an employment agreement between itself and Defendant Roach, nor does it challenge the validity of that Employment Agreement's arbitration clause. (R. 17, PageID# 230-231). Rather, as with Defendant Lombardi, Plaintiff asserts that the arbitration provision "only encompasses disputes related to 'the employment relationship' – which necessarily <u>excludes</u> claims that are not related to their employment relationship and which arose outside of Roach's employment." (R. 17, PageID# 231) (emphasis in original). Their Employment Agreement states:

14) ARBITRATION

Should any dispute arise between Employer and Employee regarding this Agreement or the employment relationship in general, including but not limited to, the hiring process, Employee's performance and/or any possible termination, Employer and Employee will confer in good faith an attempt to resolve such dispute. If the Parties are unable to resolve the dispute, and should either Party desire to pursue a claim against the other Party, the only resource available to Employer and/or Employee will be final and binding arbitration. The arbitration shall be held in the State of Alabama and shall be conducted by an impartial third-party arbitrator. The arbitration shall be confidential.

***

16) JURISDICTION & GOVERNING LAW

This Agreement shall be governed in all respects by the laws of the state of Alabama and any applicable federal laws. Both Parties consent to jurisdiction under the state and federal courts within the State of Alabama.

(R. 8-4, PageID# 185; Exh. 2A).

The only claims Plaintiff identifies as allegedly falling outside of the scope of the agreement are its claims for injurious falsehood in Count 7 and unfair competition in Count 8. (R. 17, PageID#

11

231). Therefore, the Court construes Plaintiff's brief as conceding that all remaining claims against Defendant Roach are arbitrable.

However, unlike the agreements between Plaintiff and Defendant Lombardi, Roach's Employment Agreement does not delegate the issue of arbitrability to the arbitrator and makes no reference to AAA rules.

> Under the federal common law of arbitrability, an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption: "In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). Thus, when a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute. This is so even if the facts of the dispute occurred after the contract expired.

*Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998); *White v JRHBW Realty Inc.*, 2014 U.S. Dist. LEXIS 191689, at *5-6 (N.D. Ala, Dec. 9, 2014) (noting that it had not been presented with anything "negat[ing] the concept of post-expiration arbitration" and finding it significant that the arbitration clauses contemplate "[a]ny controversy" would be subject to arbitration).

The Court finds that Plaintiff's reading of the arbitration agreement is too narrow, and the agreement does not necessarily exclude disputes unrelated to their employment relationship so long as they involve the application of the agreement. The Employment Agreement's arbitration clause applies to "any dispute [that] arise[s] between" Plaintiff (the Employer) and Defendant Roach (the Employee) regarding the "Agreement *or* the employment relationship in general …." (R. 8-4, PageID# 185, ¶14) (emphasis added). The Employment Agreement between Defendant Roach and Plaintiff contains a number of Restrictive Covenants concerning confidential information, non-

12

competition, non-solicitation, and non-disparagement. (R. 8-4, PageID# PageID# 182-184; Exh. 2A).

In addition, Plaintiff's Count 7 for injurious falsehood specifically alleges that the claim stems, at least in part, from "knowledge improperly obtained by the Former Fives Employees" which would include Defendant Roach. (R. 1, PageID# 16, ¶112). Count 7 specifically states that its claim is based on allegedly false and misleading statements made by Defendants during a presentation made to solicit a job from Vallourec. *Id*. at ¶113. Count 7 further alleged that false statements in Kraft Werks' presentation were based on "confidential information obtained by the Former Fives Employees…." *Id*. at ¶115.

In Count 8 of the Complaint alleging unfair competition, the allegations, although rather thinly pled, incorporate by reference all preceding allegations. It is clear, however, that the unfair competition count relates to the same presentation made to Vallourec underlying Count 7's injurious falsehood claim. (R. 1, PageID# 17, ¶¶119-120). Reading the Complaint as a whole, it is clear that Plaintiff's unfair competition claim is predicated on the procurement of confidential information by Plaintiff's former employees. The Complaint alleges that "Roach agreed to protect and guard the confidential and proprietary information of Fives." (R. 1, PageID# 5, ¶31).

Moreover, in a letter attached to the Complaint, Plaintiff had asserted that Defendant Roach, post-employment, "continue[d] to owe obligations to Fives as a matter of law irrespective of any written agreements you may have had with Fives. In particular, you are legally obligated under federal and state law to refrain from using any trade secrets and/or confidential information of Fives in your current roles with KWE. These obligations were made clear to you during your tenure at Fives through written policies and procedures and was **reiterated to you in employment**

13

**separation letters and/or agreements**." (R. 1-9, PageID# 87, Exh. 8) (emphasis added). Another letter to Roach referenced in the Complaint and attached thereto states that "[u]nder applicable law and **under the terms of any agreement between you and Fives mandating confidentiality**, you are prohibited from disclosing Fives's confidential or trade secret information at any time during or following your employment with Fives." (R. 1-8, PageID# 83, Exh. 7) (emphasis added). While Count's 7 and 8 may not be entirely predicated on a breach of the Employment Agreement, it is clear that those counts, at a minimum, implicate a violation of duties contained in those agreements. Plaintiff was plainly attempting to enforce the Employment Agreement's obligations on Roach *after* his employment relationship ended. Therefore, the Court finds Counts 7 and 8 also are subject to the arbitration clause.

Based on the foregoing authority, the Court GRANTS Defendant Roach's Motion to Compel Arbitration. Consistent with the parties' agreement, the venue for this arbitration shall be the State of Alabama. All claims against Defendant Roach are hereby STAYED, pending arbitration.

**C. Lack of Any Arbitration Agreement Between Defendant Dray and Plaintiff**

Defendant Dray moves the Court to compel Plaintiff to arbitrate its claims against him and to stay the action pending arbitration. (R. 8). Defendants' brief, however, concedes that "[u]nlike Lombardi and Roach, Dray did not execute a contract containing an arbitration clause in connection with his employment with Fives Bronx." *Id*. at PageID# 152.

"It goes without saying that a contract cannot bind a nonparty [to arbitration]." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 764, 151 L. Ed. 2d 755 (2002). The Sixth

14

Circuit Court of Appeals has explained that "[a]n arbitrator's authority derives solely from, and is limited by, the contract between the parties." *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 631 (6th Cir. 2014) (citations omitted). Therefore, "[a]n arbitrator … lacks authority to decide a claim the parties have not mutually agreed to arbitrate; [and] such a claim is not subject to arbitration." *Id.* (*citing AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "Accordingly, when deciding motions to compel arbitration, the proper focus is whether the parties actually agreed to arbitrate the issue, i.e., the scope of the arbitration clause, not the general policies of the arbitration statutes." *Taylor v. Ernst & Young, L.L.P.*, 2011-Ohio-5262, ¶ 20, 130 Ohio St. 3d 411, 417, 958 N.E.2d (Ohio 2011) (*citing Waffle House*, 534 U.S. at 294). "In Ohio, a nonparty to a contract generally may not enforce a party's contractual duties unless the contract makes the nonparty an intended (not just an incidental) third-party beneficiary. This neutral state-law rule generally prevents nonparties from enforcing arbitration clauses unless they are intended third-party beneficiaries." *AtriCure, Inc. v. Meng*, 12 F.4th 516, 526 (6th Cir. 2021) (internal citations omitted).

Despite the admitted lack of any agreement to arbitrate between Defendant Dray and Plaintiff, Defendants ask the Court to "compel all of Fives Bronx's claims asserted against Dray" to be sent to arbitration "based on the application of equitable estoppel, because Fives Bronx, as a signatory to the arbitration clauses contained in the … contracts with Lombardi and Roach, raises allegations of substantially interdependent and concerted misconduct by Dray, a non-signatory…." (R. 8, PageID# 152). The above-cited binding authority undermines Defendants' argument. Nevertheless, Defendants point to another decision from this district that noted some circuits "have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the

nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Liedtke v. Frank*, 437 F. Supp. 2d 696, 699 (N.D. Ohio 2006) (citations omitted). The continued viability of the *Liedtke* decision in 2006 is questionable given subsequent developments in the law and holdings of the Sixth Circuit Court of Appeals.

For example, as explained in one recent Sixth Circuit decision: "[a]t one time … the notion that a pro-arbitration presumption could permit parties to enforce a contract's arbitration clause against non-parties or non-third-party beneficiaries of the contract had strong support and "[m]any circuit courts used the federal policy favoring arbitration to broadly enforce arbitration contracts in favor of (or against) nonparties under expansive readings of generic common-law concepts." *AtriCure, Inc.*, 12 F.4th at 520. However, the Supreme Court "jettisoned" this approach in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). *Id.* at 524. While the *Atricure* decision recognized the existence of a so-called " 'Intertwined Claims' Estoppel Theory" in Ohio, it explained that in the arbitration context the theory was intended to prevent a party from fraudulently "having it both ways." *Id.* at 526. The *AtriCure* court gave the example of the proper use of intertwined claims as occurring where a plaintiff, who did not sign a contract, seeks to enforce the terms of that contract against a defendant who did sign it. In such a scenario, the non-signatory plaintiff is estopped from arguing that same contract's arbitration clause does not apply to it. *Id.* at 526-527. Conversely, "when a plaintiff has not argued inconsistently that one term of a contract governs the parties' relationship while others do not, Ohio courts reject estoppel claims." *Id.* at 527. Moreover, the Sixth Circuit noted that under the concerted-misconduct estoppel doctrine, it is "the alleged fraudster … who is supposed to be estopped, not the alleged victim." *Id*. Here, Plaintiff is the alleged victim of Defendants' alleged conduct, yet it is Defendant Dray who is

16

attempting to enforce a non-existent arbitration agreement against Plaintiff simply because Plaintiff entered into arbitration agreements with Roach and Lombardi.

The Court declines Defendant Dray's invitation to compel Plaintiff into arbitration with him where no such arbitration agreement exists between them. The Court will not fabricate a contract out of non-existent materials simply because two other similarly situated Defendants entered into arbitration agreements with Plaintiff while Defendant Dray did not. The mere fact that Plaintiff accuses Dray of misconduct that is similar to the allegations against Lombardi and Roach does not vest this Court with any authority to compel these claims against Dray to binding arbitration against Plaintiff's consent. Moreover, even if the concerted-misconduct or intertwined claim estoppel theories remain good law in Ohio, their application—given the factual allegations in this case— would be unjustified.

### D.  Defendant Kraft Werks' Motion to Stay Pending Arbitration

 Defendant Kraft Werks filed a motion to stay all proceedings pending the outcome of arbitration between Plaintiff and the individual Defendants. (R. 12). Defendant Kraft Werks contends that a stay is appropriate because the allegations against it "are based entirely on [Plaintiff's] prior employment of Defendants Lombardi, Dray and Roach." (R. 12, PageID# 201). Furthermore, Defendant Kraft Werks's brief expresses the belief that "some or all of the claims that have been raised by the Plaintiff against Kraft Werks could be narrowed, or possibly completely determined and subject to the doctrine of collateral estoppel."[5] (T. 12, PageID# 206).

―――――――――――――――

[5] In its motion, Defendant Kraft Werks cites no authority for its assumption that arbitration proceedings involving Lombardi and Roach would collaterally estop any claims Plaintiff has

17

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants," *Landis v. North American Company*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936), and that the entry of such an order ordinarily rests with the sound discretion of the District Court." *Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977).

In its brief in support of its motion to stay, Defendant Kraft Werks asserts that the claims against it, "a non-signatory to the arbitration agreement, *must* be stayed." (R. 12, PageID# 205) (emphasis added). Defendant's position, therefore, suggests that a district court has no discretion on this issue and a stay is mandatory. Nevertheless, the next sentence of Defendant's brief acknowledges the overstated position. *Id.* Quoting a decision from another district court here in the Northern District of Ohio, Defendant avers that "[c]ourts have *discretion* to stay claims against non-signatories pending the outcome of arbitration between the parties to an arbitration agreement." (R. 12, PageID# 205, *quoting Valentine v. Health & Wellness Lifestyle Clubs, LLC*, 2021 WL 4220730 at *2 (N.D. Ohio, Sep. 6, 2021)) (emphasis added). Although Kraft Werks also relies upon *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23. (1983), that Supreme Court decision observed that "[i]n some cases, of course, it may be advisable to stay litigation

_____

against Kraft Werks. Plaintiff cites several cases ostensibly for the proposition that collateral estoppel should not be applied. (R. 18, PageID# 244-248). Kraft Werks's reply cites a number of cases purportedly supporting its position, but offers no meaningful explanation as to how those cases are analogous to the case at bar. (R. 19, PageID# 225). The Court need not resolve this issue at this time, however. To the extent Kraft Werks believes a stay is appropriate because the outcome of arbitration could result in collateral estoppel, it has failed to furnish sufficient authority and argument to render its position persuasive.

18

among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court … as a matter of its discretion to control its docket.").[6] Defendant Kraft Werks also points to a decision that observed "[c]ourts have found a stay appropriate where 'a lawsuit against a nonsignatory [to an arbitration agreement] depends upon the same facts and is inherently inseparable from the arbitrable claims,' " *Lagrasso v. Prudential Ins. Co. of Am.*, 2018 U.S. Dist. LEXIS 115999 (E.D. Mich. July 12, 2018). None of these decisions compel this Court to enter a stay. Rather, they reinforce the fact that a court may exercise its own discretion when deciding whether a stay is appropriate, especially where the stay is being sought by parties who are not signatory to any arbitration agreement.

Here, Defendant Kraft Werks assumes that the lawsuit against it will rise or fall on the same facts as the arbitration claims between Plaintiff and two of its former employees—Lombardi and Roach. However, at this stage, this is mere speculation. First and foremost, Defendant Kraft Werks is a competitor to Plaintiff, not a former employee of Plaintiff like Lombardi and Roach with contractual duties such as confidentiality, and, therefore, is not similarly situated. Second, a number of claims in the Complaint are against Defendant Kraft Werks only, specifically that it engaged in false advertising under the Lanham Act and violated the Ohio Deceptive Trade Practices Act. Finally, the ultimate facts of this matter are unknown to this Court, and perhaps will only come to light through discovery. While the allegations against the three former employees of Plaintiff are strikingly similar, it remains possible that some defendants engaged in the alleged conduct while

---

[6] Courts of Appeal "have jurisdiction over … interlocutory appeal[s] under 9 U.S.C. § 16(a)(1), which provides that an appeal may be taken from an order refusing to compel arbitration or refusing to stay an action pending arbitration. We review a district court's denial of these motions de novo." *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (citations omitted).

others did not. Conversely, while it remains to be seen whether any of Plaintiff's allegations have factual support, the Court's view is that Plaintiff should not have to wait to pursue its legal rights and remedies against non-signatories until the arbitration process is completed against others.

The Court recognizes that this Order will unfortunately result in piecemeal resolution of the disputes between Plaintiff and the various Defendants. Such litigation is admittedly inefficient. However, this is the exact concern the Court raised during multiple conferences with the parties. (R. 23 & 24). The Court has deferred ruling on the pending motions, and afforded the parties substantial time to discuss the possibility of reaching "an agreement concerning mediation, arbitration, or any other method of alternate dispute resolution" specifically to avoid piecemeal resolution. (R. 24). The parties, however, reported that they have been "unable to reach an agreement regarding mediation, arbitration, or other methods of alternative dispute resolution."[7] (R. 25). In *Moses H. Cone Mem'l Hosp.*, the Supreme Court has observed that "[i]t is true … that if [the defendant] obtains an arbitration order for its dispute, the [plaintiff] will be forced to resolve these related disputes in different forums. That misfortune, however, … occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." 460 U.S. at 20 ("Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.").

---

[7] The parties could not even come to any agreement as to where the two arbitrations should take place. (R. 25). Therefore, as discussed above, the arbitrations will proceed in Cleveland, Ohio and Alabama respectively, while this action continues against the remaining Defendants in the Northern District of Ohio.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Enforce Arbitration (R. 8) is GRANTED in part and DENIED in part. It is granted with respect to Defendants Lombardi and Roach and denied with respect to Defendant Dray. Further, the actions against Defendants Lombardi and Roach are hereby STAYED, while the claims against Defendant Dray shall proceed.

Defendant Kraft Werks' Motion to Stay Pending Arbitration (R. 12) is DENIED. As stated in Footnote 1, Defendant's Motion to Strike (R. 19) is also DENIED.

Finally, Defendant Kraft Werks' Motion for Extension of Time (R. 11) is GRANTED. Defendant Kraft Werks shall file its answer to the Complaint within fourteen (14) days of this Order.

IT IS SO ORDERED.


_s/ David A. Ruiz_
DAVID A. RUIZ
Date: March 21, 2023                      UNITED STATES DISTRICT JUDGE

21